The issues submitted to the jury and their answers were as follows:
"1. Did the defendant, Stephenson, rent land of the plaintiff and J. W. Jordan, as is alleged in the complaint? Answer: No.
"2. Did crops seized in this action grow on said lands? Answer: No.
"3. If so, did the said Grubbs make advancements in supplies and money, as is alleged, to said Stephenson? Answer: Yes.
"4. Is the defendant, Stephenson, indebted to said Grubbs for such advancements? If so, in what sum? Answer: Yes; $161.50, with interest from 1 November, 1887.
"5. What was the value of the property seized in this action by the plaintiff? Answer: $125.35, with interest from 1 November, 1887."
A contract was introduced, signed by the defendant, Stephenson, agreeing to rent from J. W. Jordan, Jr., and W. F. Grubbs (68) a one-horse crop of forty acres of land for the year 1887, and to pay therefor 900 pounds lint cotton. The words "and W. F. Grubbs" had been interlined after the agreement was first written. There was conflicting testimony as to whether the interlineation was made before or after the signing by Stephenson.
The plaintiff, W. F. Grubbs, testified that after Jordan rented the Bridgers land of H. B. Peebles, he let him take a half interest in the lease; that in January, 1887, Charles Stephenson came to him to rent a one-horse crop on said farm; that he selected a piece of land lying west of the road, but did not conclude the bargain for it; that a few days afterwards he came again; he told Stephenson that he had let Coats have the piece of land on the west side of the road, but to go to Mr. J. W. Jordan and he could get land on the east side of the road just as good. He further testified that when Stephenson came the second time he, Grubbs, and Jordan had just returned from stepping off the land which Jordan let Stephenson have; that Jordan attended *Page 50 
to renting out the land and writing the contracts, and Grubbs collected the rents and settled with H. B. Peebles; that the words "and W. F. Grubbs" were in the handwriting of J. W. Jordan and were there when the paper was handed to him; that during the year 1887 he furnished Charles Stephenson with money and agricultural supplies to the amount of $ _____, of which Stephenson paid $ _____, and left due him on 1 November, 1887, $161.50; that he had been merchandising at Seaboard for several years before and after 1887, but had never, except in 1887, trusted Charles Stephenson for any goods, etc.; that if he was not Stephenson's landlord he had no lien for said advancements. (69) "The crop seized grew on the land described in Exhibit A. Charles Stephenson told me it did.
"I testified on a former trial of this case that the receipts for the rents received from Charles Stephenson were in J. W. Jordan's handwriting. All the rents were paid, and Charles Stephenson had turned over cotton to me amounting to seventy-four dollars, in part payment of his account for advancements. I was a merchant at that time."
Charles Stephenson, for defendant, testified: That in January, 1887, he went to Mr. W. F. Grubbs to rent a one-horse farm of the Bridgers land; that Grubbs told him that he could get a piece on west side of the road. A few days afterward he went to see him again, and Grubbs told him that he had let Coats have that piece of land, as he was already on it, but that Mr. J. W. Jordan would let him have all the land he wanted on the east side of the road. He went to Mr. Jordan, and he let him have a piece of land lying northeast from the house, which had been staked off, and said it was 40 acres. Afterwards he rented of Mr. Jordan another piece nearer the house, said to contain 35 acres, and also hired Mr. Jordan's mule. He admitted signing the paper marked Exhibit A, but said if W. F. Grubbs' name was in it, it was not read to him. He said Grubbs had furnished him supplies in 1887, but none before or since.
He was asked: "Did you rent any land of Grubbs for the year 1887?"
First Exception: This question was objected to (not, however, upon the ground it was leading) by plaintiff. Objection overruled, and witness answered that he had never rented any land from Grubbs at any time. Plaintiff excepted. "The crop seized was grown on the land rented for Stancill, and not on the land described in Exhibit A. I never told Mr. Grubbs that the crop grew on the land described in Exhibit A."
Second Exception: Defendant offered in evidence a paper-writing (70) purporting to be a lease from M. F. Stancill to the defendant, Stephenson. Objection by plaintiff; objection overruled, and plaintiff excepted. *Page 51 
The jury answered "No" to 1st and 2d issues; "Yes" to 3d and "$161.50" to 4th, with "interest from 1 November, 1887."
Plaintiff moved to set aside the verdict:
1. Because it was contrary to weight of evidence.
2. Because the findings on first and second issues were inconsistent with and contradictory to the finding on third issue. Motion overruled, and plaintiff excepted.
Plaintiff then moved for a trial de novo upon the grounds:
1. That the verdict was inconsistent and contradictory, as above stated.
2. For error in admitting Stephenson to testify that he never rented any land of Grubbs.
3. For error in admitting in evidence paper-writing B. Motion overruled, and plaintiff excepted.
Plaintiff then moved for judgment against Stephenson for $161.50 Motion refused, and plaintiff excepted.
Plaintiff then moved for judgment against Stephenson for $161.50 less $125.35. Motion overruled, and plaintiff excepted.
The plaintiff insisted that Stephenson, having admitted in his answer that M. F. Stancill was his landlord and entitled to the crop, was not entitled to a judgment for the return of the property and for that reason the condition of his bond was not broken. Overruled, and plaintiff excepted.
Judgment was rendered for the defendant, Stephenson, "against the plaintiff and his surety on the appeal and stay bond for $125.35, with interest from 1 November, 1887, till paid, and the costs, it appearing that the property seized cannot be returned to the (71) defendant."
Plaintiff appealed.
In addition to the exceptions noted, the appellants filed the following to the judgment, to-wit:
"1. Upon the pleading Stephenson is not entitled to a return of the property, and no judgment should have been taken against W. J. Rogers.
"2. The judgment does not conclude and put an end to the issues raised in the pleadings.
"3. It should be in the alternative."
Construing the responses to the issues in connection with the pleadings and evidence, it is clear that there is no contradiction between the finding on the third issue and that on the first and second. *Page 52 
It would simply be "sticking in the bark" to construe the words "if so," which appear in the third issue but not in the response, as having that effect. The jury to these issues simply found that the defendant did not rent the land of Grubbs, but that Grubbs made him advances for which the defendant owes him to the amount found in response to the 4th issue.
There being evidence tending to show that Grubbs' name was not in the lease when signed by the defendant, it was competent for him to testify that as a matter of fact he had rented no land of Grubbs that year; this was admissible not to contradict the paper-writing, but if the jury should find Grubbs' name was not in the paper when signed, to negative any verbal contract of renting from Grubbs of that or any other land. The defendant having testified that he had rented the land in question of Stancill, it was competent to corroborate him (72) by producing the lease from the latter.
The plaintiff's bond being for the return of the property if adjudged against him (The Code, sec. 324), neither the plaintiff nor his surety can complain that when the property or its value is returned to the defendant the latter must forthwith hand it over to the intervener. That matter in no wise concerns the plaintiff. The property being adjudged not to be his, by his bond he must return it or account for the value of it. Indeed, if the judgment had directed the return not to the defendant, but to the intervener direct, because of its being due him by the defendant, the plaintiff's bond would be responsible for the execution of the judgment. Barrington v. Skinner, ante, 47. The Code does not favor circuity of actions, and the gist of the bond is the return of the property taken, or its value, and the disposition of it, whether direct to the defendant or to the interpleader as the defendant's assignee, does not concern the plaintiff.
The judgment disposes of the controversy so far as the plaintiff is concerned. He cannot be heard to object that judgment was not rendered in favor of the intervener, as might have been done. Barrington v. Skinner,supra; The Code, sec. 424 (1).
The judgment ought properly to have been in the alternative for the return of the property, or if that could not be had, for its value with damages. The Code, sec. 431; Council v. Averett, 90 N.C. 168; Hall v.Tillman, 103 N.C. 276.
The judgment should be thus modified and affirmed.
Modified and affirmed.
Cited: Oil Co. v. Grocery Co., 136 N.C. 355. *Page 53 
(73)